# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

CANDICE DEE DAVIS-MASSEY,
BRIAN JOSEPH MASSEY, and
ADH, a minor,

      Plaintiffs,

vs.

CHERYL AMEEN, SUZANNE
KOFKA, MARCHELLE DENKER,
MARY JANE SOKOLOVSKE,
DEWEY P. SLOAN, JAQUELIN FOX,
KRISTINE TIMMINS and CHARLES
PALMER,

      Defendants.

No. C16-4020

REPORT AND
RECOMMENDATION

---

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*III.*  *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     *A.*   *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     *B.*   *Factual Recitation in Plaintiffs' Complaint* . . . . . . . . . . . . . . . . . 5
     *C.*   *Underlying State Court Proceedings Associated with*
         *Plaintiffs' Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*IV.*  *MOTION TO DISMISS STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . 8
     *A.*   *Rule 12(b)(1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     *B.*   *Rule 12(b)(6)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**V.   LEGAL STANDARD FOR SUMMARY JUDGMENT** . . . . . . . . . . . . . . 10

**VI.  DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    **A.   Rooker-Feldman Doctrine** . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    **B.   Absolute and Qualified Immunity** . . . . . . . . . . . . . . . . . . . . . . 14
        **1.   Absolute Immunity** . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            **a.   Defendants Kofka, Ameen, and Palmer** . . . . . . . . . 14
            **b.   Judge Sokolovske** . . . . . . . . . . . . . . . . . . . . . . . 16
            **c.   Defendants Sloan, Fox, and Timmins** . . . . . . . . . . 17
        **2.   Qualified Immunity** . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    **C.   Failure to State a Valid Claim under § 1983** . . . . . . . . . . . . . . 21
    **D.   Statute of Limitations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    **E.   Res Judicata** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    **F.   Actions Performed in Purely Supervisory Capacity** . . . . . . . . . . . 25

**VII.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**VIII. RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## *I. INTRODUCTION*

This matter comes before the Court on the Motion to Dismiss (docket number 6) filed by Defendants Cheryl Ameen, Suzanne Kofka, and Charles Palmer on May 6, 2016; the Motion to Dismiss (docket number 8) filed by Defendant Marchelle Denker on May 6, 2016; the Motion to Dismiss (docket number 9) filed by Defendant Mary Jane Sokolovske on May 6, 2016; and the Motion for Summary Judgment (docket number 12) filed by Defendants Dewey P. Sloan, Jaquelin Fox, and Kristine Timmins on May 20, 2016.

On May 9, 2016, Judge Leonard T. Strand referred the motions to dismiss to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Also, on May 24, 2016, Judge Strand referred the motion for summary judgment to a

magistrate judge for a report and recommendation. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

On March 25, 2016, Plaintiffs Candice Dee Davis-Massey, Brian Joseph Massey, and minor child ADH, filed a Complaint pursuant to 42 U.S.C. § 1983, alleging Defendants violated their Fourth, Fifth, Sixth, and Fourteenth Amendments rights. Plaintiffs are seeking: (1) Return of ADH's "custody and all rights" to Candice Davis-Massey and Brian Massey; (2) "ADH's residence not change from Woodbury County until this action is resolved"; (3) Brian Massey's removal from the child abuse registry; and (4) monetary damages in the amount of $4,900,001, plus legal fees, court costs, interest, and any additional awards determined by the court.

On May 3, 2016, Defendants Sloan, Fox, and Timmins filed an Answer, generally denying the material allegations contained in the complaint, and asserting certain affirmative defenses. On May 6, 2016, Defendants Ameen, Kofka, Palmer, Denker, and Sokolovske filed their instant motions to dismiss. On May 20, 2016, Defendants Sloan, Fox, and Timmins filed the instant motion for summary judgment. Plaintiffs did not file any type of resistance to the motions to dismiss or the motion for summary judgment, and the time for doing so has passed.[1]

## III. RELEVANT FACTS

### A. The Parties

Plaintiffs Candice Davis-Massey and Brian Massey are married. It is Candice Davis-Massey's second marriage. Plaintiff ADH is Candice Davis-Massey's daughter from her first marriage. Plaintiffs' complaint stems from Candice Davis-Massey and Brian

---

[1] The deadline for Plaintiffs to respond was extended by more than two months.

Massey's loss of custody of ADH, and Brian Massey being prosecuted for misdemeanor assault.

Defendant Suzanne Kofka is a retired employee of the Iowa Department of Human Services ("DHS"), where she worked in the state social services agency. She handled child welfare actions for the agency. It appears from Plaintiffs' complaint that Kofka investigated and initiated the child-in-need-of-assistance ("CINA") action regarding ADH.

Defendant Cheryl Ameen is an employee of the Iowa DHS, and works in the state social services agency. She handles child welfare actions for the agency. Similar to Kofka, it appears from Plaintiffs' complaint that Ameen teamed with Kofka in investigating and initiating the CINA action regarding ADH.

Defendant Charles Palmer is the Director of the Iowa DHS. He is Kofka and Ameen's highest level supervisor.

Defendant Marchelle Denker is employed by the State of Iowa as a Public Defender. Denker was appointed to serve as ADH's attorney and guardian ad litem in juvenile court proceedings associated with this case.[2]

Defendant Mary Jane Sokolovske is an Iowa State Court Judge in Iowa District 3B. Judge Sokolovske presided over various parts of child custody and termination of parental rights proceedings concerning ADH in the juvenile court.

Defendant Dewey P. Sloan is a retired former Assistant Woodbury County Attorney. He was assigned to the Juvenile Division of the Woodbury County Attorney's office. Sloan petitioned for the termination of Candice Davis-Massey's parental rights on two separate occasions.

Defendants Jaquelin Fox and Kristine Timmins are employed as Assistant Woodbury County Attorneys. They are both assigned to the Misdemeanor Division of the

---

[2] A different attorney was later appointed to serve as ADH's guardian ad litem.

Woodbury County Attorney's office. They prosecuted Brian Massey for misdemeanor assault.

## B. Factual Recitation in Plaintiffs' Complaint

According to the complaint, on August 25, 2011, Iowa DHS interviewed ADH regarding a claim of child abuse against her. ADH was interviewed by Defendant Suzanne Kofka. Based on statements from ADH, the complaint asserts on September 26, 2011, DHS "founded and confirmed" Brian Massey of child abuse, and Plaintiffs lost custody of ADH. Additionally, while it is unclear from the complaint, Plaintiff Brian Massey was arrested for child abuse at some point in time.

Next, the complaint asserts that on October 24, 2011, Plaintiff Candice Davis-Massey picked up ADH, presumably at day care/school for visitation, and noticed a hand print on ADH's lower left back/buttock. ADH told Davis-Massey that her father's girlfriend caused the mark on her left back/buttock. Because the incident occurred in South Dakota, Davis-Massey contacted police in Elk Point, South Dakota. According to the complaint, ADH's father and girlfriend initially denied hitting ADH, but later admitted spanking her. The complaint also states ADH's father admitted hitting ADH in August 2011 for throwing Legos.

The complaint further alleges that following the hand print/spanking incident, Iowa DHS employee Defendant Cheryl Ameen spoke with police officers in South Dakota, who told her ADH's father admitted hitting ADH in August and October, 2011. In response, the complaint alleges DHS ignored the information from the South Dakota police; and instead, completely prevented ADH from having visitation with her mother, Candice Davis-Massey. The complaint alleges Ameen met with ADH's father to conspire to "cover-up" ADH's father's alleged physical abuse in August and October, 2011. Specifically, the complaint states:

> [s]o here we sit, knowing that [ADH's father] is abusing ADH
> and we knew it was being covered up, BUT, we had no proof,
> we knew that Ameens [(*sic*)] lie that ADH fell in to a dresser
> was just that, a lie. There was nothing we could do, we are
> told ADH fell in to a dresser and that is why she has a hand
> print on her back.

Plaintiffs' Complaint (docket number 1) at 7-8.

It is unclear from the complaint, but sometime later Davis-Massey sent Judge Sokolovske a letter detailing the events that allegedly took place in South Dakota involving ADH being hit by her father. The complaint asserts the "letter was ignored by [Judge] Sokolovske."[3]

Next, the complaint alleges on May 15, 2012, at a termination of parental rights hearing, evidence was admitted in the form of an email from South Dakota, presumably discussing ADH's father hitting ADH in August and October, 2011. According to the complaint:

> At this exact moment in time Marchelle Denker, Dewey Sloan,
> Jaquelin Fox, Kristine Timmins and Judge Sokolovske all
> knew [ADH's father] had admitted hurting ADH in August
> and October. This exculpatory evidence was hidden by every
> single one of these attorneys and ignored by the judge.

Plaintiffs' Complaint (docket number 1) at 8.

The complaint further states Davis-Massey contacted Defendant Charles Palmer, Director of the Iowa DHS, complaining about the actions of Kofka and Ameen (employees in his department) and what had happened to her family. According to the complaint,

---

[3] Plaintiffs' Complaint (docket number 1) at 8.

Palmer responded "the Child Protective Worker conducted the required interviews to determine that Brian Massey caused the injury to ADH."[4]

The complaint concludes:

> Fact is [ADH's father] was on a no contact order with Candice when he abused ADH in August. If you take ADH's statements and deposition you see that it does not make any sense about what transpired, however if you replace Brian's name with [ADH's father] in her testimony it clearly shows an accurate portrayal of what really happened to ADH. . . . Lastly was the Termination hearing and on March 27th 2014 when Judge Sokolovske gave custody of my daughter to the man that abuses her.

Plaintiffs' Complaint (docket number 1) at 10.

While it is not entirely clear from the complaint, Plaintiffs apparently allege that the actions set forth above violated their Fourth, Fifth, Sixth, and Fourteenth Amendment rights. This action is brought pursuant to 42 U.S.C. § 1983. *See* Plaintiffs' Complaint (docket number 1) at 4.

### C. Underlying State Court Proceedings Associated with Plaintiffs' Complaint

At the outset of this case, Candice Davis-Massey, ADH's mother, had physical custody of ADH pursuant to a dissolution decree between Davis-Massey and ADH's father. In 2011, it was alleged Brian Massey — who at the time was Davis-Massey's significant other and is presently her husband — physically abused ADH. Iowa DHS investigated and determined the report of abuse to be founded. A CINA action was filed by DHS. Following the filing of the CINA action, custody of ADH was transferred from her mother to her father. Twice the State petitioned to terminate Davis-Massey's parental rights. The juvenile court denied both petitions, and referred the matter to the divorce

---

[4] *Id.* at 9.

action between ADH's parents for determination of custody of ADH. The divorce court entered a custody order placing ADH with her father, and allowing Davis-Massey supervised visitation.

Additionally, on October 5, 2011, Brian Massey was charged in Woodbury County with serious assault, a serious misdemeanor.[5] Massey's prosecution progressed to trial, and the jury returned a verdict of not guilty.

## IV. MOTION TO DISMISS STANDARDS

Defendants Kofka, Ameen, Palmer, Denker, and Sokolovske seek dismissal of Plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).

### A. Rule 12(b)(1)

Under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), a party may seek dismissal of an action for "lack of subject-matter jurisdiction." *Id.* When deciding a RULE 12(b)(1) motion, courts must first determine whether the motion is a "facial attack" or "factual attack." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)); *see also Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (discussing RULE 12(b)(1) motions and *Osborn*). In a facial attack, courts must determine whether the "'plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'" *Branson Label, Inc.*, 793 F.3d at 914 (quotation omitted). Thus, a court restricts itself "'to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quotation omitted).

In a factual attack, subject matter jurisdiction is challenged in fact, and "'no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of

---

[5] *See* Iowa Code section 708.2(2).

jurisdictional claims.'" *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977)). In evaluating the jurisdictional claims in a factual attack, courts "may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). The burden is on the plaintiff to show that jurisdiction does in fact exist. *Osborn*, 918 F.2d at 730.

Here, Defendants do not attack the factual basis for subject matter jurisdiction. Instead, all Defendants argue the *Rooker-Feldman* doctrine is applicable in this case, depriving the court of jurisdiction to hear this dispute. Accordingly, the Court determines that the nature of the RULE 12(b)(1) attack presented in Defendants' motions to dismiss is a facial attack.[6]

### B. Rule 12(b)(6)

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) authorizes the dismissal of a claim if the plaintiff fails to state a claim upon which relief can be granted. In assessing a motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *In re Operation of Missouri River System Litigation*, 418 F.3d 915, 917 (8th Cir. 2005). In discussing RULE 12(b)(6) motions to dismiss, the Eighth Circuit Court of Appeals has stated that such motions:

> '[do] not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). The complaint

---

[6] In their motion for summary judgment, Defendants Sloan, Fox, and Timmins also assert that Plaintiffs' complaint should be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See* Motion for Summary Judgment (docket number 12) at 1; ¶ 2.c.

must allege facts, which, taken as true, raise more than a speculative right to relief. *Id.* at 1965. Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997).

*Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008); *see also Missouri River System Litigation*, 418 F.3d at 917 (A court may "dismiss the case only when it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief."); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) ("A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.' *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).").

## V. LEGAL STANDARD FOR SUMMARY JUDGMENT

Defendants Sloan, Fox, and Timmins move for summary judgment and dismissal of Plaintiffs' complaint against them.

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes*

*Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## VI. DISCUSSION

In the various motions to dismiss and the motion for summary judgment, all Defendants assert dismissal of Plaintiffs' complaint is warranted under the *Rooker-Feldman* doctrine. Defendants Kofka, Ameen, Palmer, Sokolovske, Sloan, Fox, and Timmins all assert the protection of absolute or qualified immunity, also requiring dismissal of Plaintiffs' complaint. Defendants Kofka, Ameen, Palmer, Denker, and Sokolovske contend dismissal of Plaintiffs' complaint is also warranted because Plaintiffs failed to state a claim upon which relief may be granted. Defendants Kofka, Ameen, Palmer, Sloan, Fox, and Timmins also assert Plaintiffs' complaint should be dismissed because Plaintiffs' claims are time barred by the applicable statute of limitations. Additionally, Defendants Kofka, Ameen, and Palmer contend Plaintiffs' complaint should be dismissed on the basis of *res judicata*. Finally, Defendant Palmer argues he may not be sued by Plaintiffs because his actions in this matter were purely supervisory.

## A. Rooker-Feldman Doctrine

Under the *Rooker-Feldman* doctrine, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgment." *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) ("[N]o court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors [of an effective and conclusive state court adjudication]."). The *Rooker-Feldman* doctrine eliminates not only straightforward appeals, but also indirect attempts by federal plaintiffs to challenge state court decisions.

"[A] corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court." *Lemonds*, 222 F.3d at 492-93. A federal claim is "inextricably intertwined" with a state court judgment "'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" *Id.* at 493 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). In other words, a federal claim is "inextricably intertwined" with a state court claim, if the relief sought in the federal action "would effectively reverse the state court decision or void its ruling." *Bechtold v. City of Rosemont*, 104 F.3d 1062, 1065 (8th Cir. 1997) (citation omitted). Furthermore, "if a litigant has raised and lost claims in state court, he may not recast those claims under section 1983 and try again. He must follow the appellate procedure through the state courts and seek review before the Supreme Court." *Prince v. Arkansas Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004); *see also Dodson v. University of Arkansas for Medical Sciences*, 601 F.3d 750, 754 (8th Cir. 2010) ("This court has

expressly cautioned against a state court loser seeking victory against his adversary in a subsequent § 1983 action in federal court.").

All Defendants argue Plaintiffs' complaint falls squarely within the scope of the *Rooker-Feldman* doctrine. Defendants assert Plaintiffs' complaint has its basis in Plaintiffs' dissatisfaction with the outcome of proceedings at various stages of state court litigation. Specifically, Defendants point out Plaintiffs seek reversal of state court decisions, including the return of ADH's "custody and all rights" to Candice Davis-Massey and Brian Massey, and removal of Brian Massey from the child abuse registry. Defendants maintain Plaintiffs could have, and should have, appealed the decisions at issue in their complaint to the appropriate state appellate court if they were dissatisfied with the outcome of the decisions. Defendants conclude the *Rooker-Feldman* doctrine bars Plaintiffs from bringing an untimely appeal of a state court judgment through the guise of a § 1983 action in federal court.

It is clear from the record before the Court that the injuries Plaintiffs are complaining of were caused by the state court decisions which ruled against them. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (holding the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state court judgments . . . and inviting district court review and rejection of those judgments"). Moreover, the *Rooker-Feldman* doctrine is applicable because Plaintiffs' federal claims are "inextricably intertwined" with their state court claims, and the relief sought in their federal action "would effectively reverse the state court decision or void its ruling." *Bechtold*, 104 F.3d at 1065. Therefore, because Plaintiffs raised and lost claims in state court, they "may not recast those claims under section 1983 and try again." *Prince*, 380 F.3d at 340. Instead, Plaintiffs should have followed the "appellate procedure through the state courts and [sought] review before the Supreme Court." *Id.*; *see also Dodson v. University of Arkansas for Medical Sciences*,

13

601 F.3d 750, 754 (8th Cir. 2010) ("This court has expressly cautioned against a state court loser seeking victory against his adversary in a subsequent § 1983 action in federal court."). Accordingly, I believe the Court lacks jurisdiction under the *Rooker-Feldman* doctrine to consider Plaintiffs' compliant. Accordingly, I believe Plaintiffs' complaint should be dismissed.

## B. Absolute and Qualified Immunity

All Defendants except Denker assert they are entitled to absolute and/or qualified immunity from Plaintiffs' lawsuit.

### 1. Absolute Immunity

#### a. Defendants Kofka, Ameen, and Palmer

Defendants Kofka, Ameen, and Palmer assert they have absolute immunity from suit for their actions taken in pursuit of a CINA action involving ADH, and led to termination of parental rights proceedings against Candice Davis-Massey.[7] Specifically, Defendants Kofka and Ameen assert:

> Essentially, Plaintiffs complain of the fact Brian Massey was investigated for physical abuse, that allegations regarding the father were not more fully investigated, and that these matters caused the mother to lose full time custody of the child in the juvenile court. The Department Defendants are entitled to absolute immunity against such allegations.

Brief in Support of Defendants Kofka, Ameen, and Palmer's Motion to Dismiss (docket number 6-1) at 11.

In *Thomason v. SCAN Volunteer Services, Inc.*, 85 F.3d 1365 (8th Cir. 1996), the Eighth Circuit Court of Appeals addressed a § 1983 action brought by parents of a child

---

[7] Defendant Charles Palmer played no role in the investigation or initiation of CINA proceedings with regard to ADH. Palmer's role was strictly supervisory, as the Director of Iowa DHS. Palmer's immunity will be addressed in section *VI.F* of this Report and Recommendation, addressing supervisor liability in § 1983 actions.

removed from their home for two weeks via a state court *ex parte* order, alleging their substantive due process rights were violated due to the deprivation of their liberty interest in the care, custody, and management of their child. *Id.* at 1370. Defendant SCAN Volunteer Services, Inc. is a not-for-profit corporation with the "power under Arkansas state law to investigate allegations of suspected child abuse, to refer such abuse to the state prosecuting authorities, to remove victims of suspected parental abuse from their homes, and to seek protective custody for such victims by order of the Juvenile Court[.]" *Id.* at 1367. After it was determined that the child in *Thomason* should be removed from the plaintiff's home, Defendant Geneva Wordlaw, a SCAN employee, was assigned the task of removing the child. *Id.* at 1369. The Eighth Circuit determined SCAN and Wordlaw were "absolutely immune from liability for their participation in the ex parte proceedings in state court that led to the award of temporary protective custody of [the child] to the state." *Id.* at 1373. The Eighth Circuit reasoned:

> To the extent Wordlaw and SCAN are sued for initiating the judicial proceedings, Wordlaw's role was functionally comparable to that of a prosecutor. . . . To the extent Wordlaw and SCAN are sued because Wordlaw made arguably false statements in her affidavit in her role as a witness before the state court, the doctrine of absolute witness immunity applies.

*Id.* (citations omitted).

It is clear from the record that both Kofka and Ameen investigated and later initiated CINA proceedings for ADH. As far as Kofka's and Ameen's actions constituted the initiation of judicial proceedings, I believe they are entitled to absolute immunity. *See id.* at 1373 (finding social workers "absolutely immune from liability for their participation

in the ex parte proceedings in state court that led to the award of temporary protective custody of [the child] to the state").[8]

### b. Judge Sokolovske

Judge Sokolovske argues she is entitled to absolute judicial immunity, and Plaintiffs' complaint against her should be dismissed. Judge Sokolovske points out that Plaintiffs' claims stem entirely from her presiding over various aspects of ADH's child custody and termination of parental rights proceedings in state juvenile court. Judge Sokolovske concludes her actions in the judicial proceedings were performed in her judicial capacity, and she had jurisdiction over the proceedings. Under such circumstances, Judge Sokolovske maintains she is entitled to absolute judicial immunity.

Absolute judicial immunity "is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[J]udicial immunity is not overcome by allegations of bad faith or malice[.]" *Id.*; *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously or corruptly[.]"). Judicial immunity is overcome in only two sets of circumstances: (1) A judge is not entitled to immunity for nonjudicial actions (actions taken out of the judge's judicial capacity); and (2) a judge is not entitled to immunity, even if his or her actions were judicial in nature, if the actions were taken in the absence of all jursidiction. *Mireles*, 502 U.S. at 11-12; *see also Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994) ("Judges performing judicial functions enjoy absolute immunity from . . . liability."); *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986) ("[A] judge is entitled to absolute immunity if the acts complained of were "judicial acts" and were not taken in the "clear absence of

---

[8] With regard to Kofka and Ameen's role investigating the alleged child abuse resulting in CINA a proceedings, the Court will address that issue in section *VI.B.2* of this Report and Recommendation, concerning qualified immunity.

all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 355-57, 98 S. Ct. 1099, 1104-05, 55 L. Ed. 2d 331 (1978)."). In determining whether an act by a judge is "judicial," courts must consider "whether the judge was interacting with the complaining party in a judicial capacity." *Liles*, 804 F.2d at 495 (citation omitted).

In their complaint, Plaintiffs allege Judge Sokolovske made incorrect rulings and ignored evidence presented by Plaintiffs. Regardless of Plaintiffs' allegations, in ruling on evidentiary issues and rendering judgments, Judge Sokolovske was clearly acting within her judicial capacity. *See Robinson*, 15 F.3d at 108 ("Judges performing judicial functions enjoy absolute immunity from . . . liability."); *see also Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice[.]"); *Pierson*, 386 U.S. at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously or corruptly[.]"). Judge Sokolovske also had jurisdiction over the proceedings involving ADH in juvenile court. *See* Iowa Code section 602.7101(1)-(2) (Providing in pertinent part "[t]he juvenile court is within the district court . . . [and t]he jurisdiction of the juvenile court may be exercised by any district judge[.] . . ."). Because Judge Sokolovske meets both prongs of the two-part test for determining immunity, I believe Judge Sokolovske is entitled to absolute judicial immunity, and Plaintiffs' complaint against Judge Sokolovske should be dismissed. *See* Liles, 804 F.2d at 495 ("[A] judge is entitled to absolute immunity if the acts complained of were "judicial acts" and were not taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 355-57, 98 S. Ct. 1099, 1104-05, 55 L. Ed. 2d 331 (1978).").

### c. Defendants Sloan, Fox, and Timmins

Defendant Sloan argues he is entitled to absolute immunity against Plaintiffs' allegations of constitutional violations for filing two petitions for termination of parental rights, failure to disclose exculpatory evidence, and failure to call Brian Massey as a witness. Defendants Fox and Timmins argue they are entitled to absolute immunity against

Plaintiffs' allegations of constitutional violations for failing to disclose exculpatory evidence, offering Brian Massey a plea agreement, statements made in closing argument of Brian Massey's trial, and filing additional minutes of testimony in Brain Massey's criminal case.

Prosecutors enjoy absolute immunity from civil liability "when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Anderson v. Larson*, 327, F.3d 762, 768 (8th Cir. 2003)). "'Actions connected with initiation of prosecution, even if those actions are patently improper' are immunized." *Schenk*, 461 F.3d at 1046 (quoting *Williams v. Hartje*, 827 F.2d 1203, 1208 (8th Cir. 1987)); *see also Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) ("Immunity is not defeated by allegations of malice, vindictiveness, or self-interest."). However, absolute immunity is not available to prosecutors for administrative or investigative actions unrelated to the initiation of a prosecution. *Schenk*, 461 F.3d at 1046 (citation omitted). Thus, the issue of "'whether absolute or qualified immunity applies depends on whether the prosecutor's acts were prosecutorial, investigatory or administrative in nature.'" *Id.* (quotation omitted).

Here, the actions of Sloan, Fox, and Timmins that Plaintiffs complaint violated their constitutional rights are all prosecutorial functions that are "intimately associated with the judicial process." *Shenk*, 461 F.3d at 1046 (citation omitted). Accordingly, Sloan, Fox, and Timmins are entitled to absolute immunity. *See id.* ("'Actions connected with initiation of prosecution, even if those actions are patently improper' are immunized.") (quotation omitted); *Reasonover*, 447 F.3d at 580 ("Even if [a prosecutor] knowingly presented false, misleading, or perjured testimony, or even if he [or she] withheld or suppressed exculpatory evidence, he [or she] is absolutely immune from suit."); Iowa Code § 232.111(1) (providing a county attorney may petition for termination of parental

rights). Because Sloan's, Fox's, and Timmins' alleged improper actions — filing two petitions for termination of parental rights, determining who should be called as a witness, comments made during a closing argument, filing additional minutes of testimony, and failing to disclose exculpatory evidence — are all prosecutorial functions associated with the judicial process, I believe Sloan, Fox, and Timmins are entitled to absolute immunity, and Plaintiffs' complaint against them should be dismissed.

### 2. *Qualified Immunity*

In the alternative, Defendants Kofka and Ameen argue if absolute immunity does not apply to them, then they are entitled to qualified immunity.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Howard v. Kansas City Police Department*, 570 F.3d 984, 987-88 (8th Cir. 2009) ("'Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.' *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006).").

A two-part inquiry is employed to determine whether a government official is entitled to qualified immunity. *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009). The two-part inquiry requires the Court to determine:

> (1) whether the facts shown by the plaintiff make out a
> violation of a constitutional or statutory right, and (2) whether
> the right was clearly established at the time of the defendant's
> alleged misconduct.

*Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether a right is clearly established the

"'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Serna*, 567 F.3d at 952 (quoting *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998)).

Here, Kofka's and Ameen's actions in initiating CINA proceedings for ADH are absolutely immune from suit. Kofka's and Ameen's investigation giving rise to the initiation of the CINA action, however, is not absolutely immune from suit. Instead, I believe Kofka's and Ameen's investigation into child abuse of ADH is entitled to qualified immunity.

In *Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005), the Eighth Circuit Court of Appeals explained:

> "When a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action is properly founded upon a reasonable suspicion of child abuse." *Thomason v. SCAN Volunteer Servs.*, 85 F.3d 1365, 1371 (8th Cir. 1996). The need to weigh a parent's right to familial integrity against the state's interest in protecting the child makes it difficult to overcome a qualified immunity defense in the context of a child abuse investigation. *See Abdouch* [*v. Burger*], 426 F.3d [982,] 987 [(8th Cir. 2005)].

*Id*. at 926. In *Dornheim*, the Eighth Circuit determined the child abuse investigation in that case was warranted and the alleged unconstitutional violations — inadequate investigation, failure to interview certain witnesses, and failure to believe certain witnesses — were within the confines of the investigation. 430 F.3d at 926. Based on those facts, the Eighth Circuit determined the two social workers and a police officer who investigated the child abuse were entitled to qualified immunity. *Id*.

Similar to *Dornheim*, there appears to be no dispute that investigation of child abuse was warranted in this case. Moreover, Plaintiffs' complaint, like the allegations in

*Dornheim*, alleges inadequate investigation, focusing on a failure to interview certain witnesses and a failure to believe certain witnesses. Therefore, as in *Dornheim*, I believe the facts underlying Kofka's and Ameen's investigation of child abuse against ADH entitle Kofka and Ameen to qualified immunity. Therefore, Plaintiffs' complaint against Kofka and Ameen should be dismissed because they are entitled to absolute immunity for initiating CINA proceedings for ADH, and qualified immunity for investigating child abuse of ADH.[9]

## C. Failure to State a Valid Claim under § 1983

Defendants Kofka, Ameen, Palmer, Denker, and Sokolovske all assert Plaintiffs' complaint fails to set forth a claim upon which relief may be granted because Plaintiffs' complaint does not set forth a valid § 1983 action.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* (citation omitted).

---

[9] *See* Section VI.B.1.a of this Report and Recommendation for discussion of Kofka's and Ameen's entitlement to absolute immunity for their initiation of CINA proceedings for ADH.

In their complaint, Plaintiffs make vague reference to deprivation of their civil rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.[10] In reviewing their complaint, it is unclear how Plaintiffs believe their constitutional rights were violated. In other words, it is unclear what connection Plaintiffs are asserting between the alleged acts of the Defendants and their constitutional deprivation. Therefore, based on a thorough review of Plaintiffs' complaint, I do not believe the factual allegations contained in the complaint "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Accordingly, I believe Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted.

### D. Statute of Limitations

Defendants Kofka, Ameen, Palmer, Sloan, Fox, and Timmins assert Plaintiffs' complaint is time barred by the applicable statute of limitations.

"A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citing *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008)). Section 1983 actions are not governed by a specific statute of limitations, *Wilson v. Garcia*, 471 U.S. 261, 266 (1985), and no federal statute of limitations governs such actions. *Board of Regents, Univ. of New York v. Tomanio*, 446 U.S. 478, 483 (1980). When no relevant federal statute of limitations exists, "the controlling period would ordinarily be the most appropriate one provided by state law." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462 (1975) (citations omitted). In § 1983 actions, the applicable statute of limitations is governed by the statute of limitations for personal injury action in the state where the claim arises. *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) (citation omitted). Here, the applicable statute

---

[10] *See* Plaintiffs' Complaint (docket number 1) at 4.

of limitations is Iowa's two-year statute of limitations for personal injury. *See* Iowa Code section 614.1(2); *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) (providing that § 1983 actions in Iowa are governed by a two-year statute of limitations).

Plaintiffs filed their complaint on March 25, 2016. The allegations against Defendants Kofka, Ameen, and Palmer began in August 2011, and ended with the final juvenile court hearing in January 2014. Therefore, the allegations in Plaintiffs' complaint against Kofka, Ameen, and Palmer are time-barred by the applicable statute of limitations, and should be dismissed. *See Wycoff*, 773 F.2d at 984 (providing that § 1983 actions in Iowa are governed by a two-year statute of limitations); Iowa Code section 614.1(2).

Similarly, the allegations against Defendants Fox and Timmins stem from their prosecution of Brian Massey. Massey's prosecution proceeded to jury trial, and he was found not guilty on August 23, 2012. Accordingly, the allegations in Plaintiffs' complaint against Fox and Timmins are time-barred by the applicable statute of limitations, and should be dismissed. *See Wycoff*, 773 F.2d at 984 (providing that § 1983 actions in Iowa are governed by a two-year statute of limitations); Iowa Code section 614.1(2).

Finally, the allegations against Defendant Sloan involve the two petitions for termination of parental rights. The final hearing on the second petition for termination of parental rights took place on January 29, 2011. Therefore, the allegations in Plaintiffs' complaint against Sloan are time-barred by the applicable statute of limitations, and should be dismissed. *See Wycoff*, 773 F.2d at 984 (providing that § 1983 actions in Iowa are governed by a two-year statute of limitations); Iowa Code section 614.1(2).

### E. Res Judicata

Defendants Kofka, Ameen, and Palmer argue in the alternative, if the *Rooker-Feldman* doctrine does not govern this case, then Plaintiffs' complaint is subject to dismissal on the basis of *res judicata*.

The Eighth Circuit has held that "an issue may not be relitigated in a second lawsuit where that issue had previously been litigated in a prior lawsuit which involved the same cause of action. Furthermore, issues which might have been raised in the first lawsuit may not be raised in a second lawsuit arising out of the same cause of action." *Robbins v. District Court of Worth County, Iowa*, 592 F.2d 1015, 1017 (8th Cir. 1979). In determining whether the causes of action are the same in each lawsuit, a court must "examine whether or not the primary right and duty, and the . . . wrong are the same in each action." *Id.* (citation omitted). Furthermore, "the principle of Res judicata applies to § 1983 actions and operates as a bar to the relitigation of constitutional issues actually raised as well as to constitutional issues that could have been raised in a prior lawsuit if the second suit concerns the same operative nucleus of fact." *Id.* (citations omitted).

In *Robbins*, the plaintiffs brought a § 1983 claim alleging their parental rights were unjustly and unconstitutionally terminated. Applying the principles of *res judicata*, the Eighth Circuit Court of Appeals determined:

> [The plaintiffs] resisted termination of their parental rights in the Iowa state courts and presently complain that their civil rights were violated by the termination. It is equally apparent that the causes of action in each proceeding are the same. Appellants argued in state court as they do here that their parental rights were unjustly and unconstitutionally terminated. Thus their § 1983 action is based on the same nucleus of operative fact before the Iowa courts. Appellants had the opportunity to raise these issues before the Iowa Supreme Court and having failed to do so cannot now attempt to circumvent the doctrine of claim preclusion by merely alleging a different theory of recovery where the actions arise out of the same transaction.

*Robbins*, 592 F.2d at 1018 (citation omitted).

Defendants Kofka, Ameen, and Palmer argue the facts in this matter are similar to *Robbins*, and Plaintiffs' complaint should be dismissed because "previous state court

24

rulings are *res judicata* of the propriety of the child's removal and transfer of custody."[11] Kofka, Ameen, and Palmer point out that Plaintiffs' allegations of wrongdoing against them in the juvenile court proceedings and dissolution proceedings were litigated or should have been litigated in state court. Kofka, Ameen, and Palmer assert "Plaintiffs had numerous opportunities to convince Iowa courts that this matter was improperly investigated or that the father was actually responsible for the child's injuries. They simply failed to convince the courts of this."[12]

Having reviewed the entire record, I believe Plaintiffs' § 1983 action is based on the same nucleus of operative fact before the Iowa courts. Accordingly, I believe the principles of *res judicata* apply to this matter and Plaintiffs' complaint should be dismissed. *See Robbins*, 592 F.2d at 1017 ("[T]he principle of Res judicata applies to § 1983 actions and operates as a bar to the relitigation of constitutional issues actually raised as well as to constitutional issues that could have been raised in a prior lawsuit if the second suit concerns the same operative nucleus of fact.").

### F. Actions Performed in Purely Supervisory Capacity

Defendant Palmer argues he may not be sued for his actions in this matter because his actions were performed in a purely supervisory capacity.

"A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondant superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citing *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). Instead, a supervisor may be held liable in a § 1983 action if he or she:

> directly participates in a constitutional violation or if failure to
> properly supervise and train the offending employee caused a

---

[11] Brief in Support of Defendants Kofka, Ameen, and Palmer's Motion to Dismiss (docket number 6-1) at 11.

[12] *Id.*

> deprivation of constitutional rights. The plaintiff must
> demonstrate that the supervisor was deliberately indifferent to
> or tacitly authorized the offending acts. This requires a
> showing that the supervisor had notice that the training
> procedures and supervision were inadequate and likely to
> result in a constitutional violation.

*Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted). "[M]ere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (citation omitted).

With respect to Palmer's role in this matter, there is no evidence that Palmer participated in any constitutional violation, or failed to properly supervise or train his subordinates. Accordingly, I believe dismissal is appropriate because the record lacks any evidence to support the imposition of supervisory liability upon Palmer.

## VII. CONCLUSION

I believe the Court lacks jurisdiction over this case under the *Rooker-Feldman* doctrine; and therefore, Plaintiffs' complaint against all Defendants should be dismissed. I also believe that: (1) Defendants Kofka and Ameen are entitled to absolute immunity for their initiation of CINA proceedings for ADH, and qualified immunity for their investigation of child abuse against ADH; (2) Defendant Sokolovske is entitled to absolute judicial immunity; and (3) Defendants Sloan, Fox, and Timmins are entitled to absolute prosecutorial immunity. Accordingly, these Defendants are immune from suit, and the claims against them should be dismissed. I further believe Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted, as raised by Defendants Kofka, Ameen, Palmer, Denker, and Sokolovske. Additionally, the complaint as it pertains to Defendants Kofka, Ameen, Palmer, Sloan, Fox, and Timmins is time-barred by the applicable statute of limitations. Therefore, the claims against those

Defendants should be dismissed. I also believe the principles of *res judicata* apply to this matter and Plaintiffs' complaint should be dismissed as to Defendants Kofka, Ameen, and Palmer. Finally, I believe dismissal is appropriate as to Defendant Palmer because the record lacks any evidence to support the imposition of supervisory liability upon Palmer.

## *VIII. RECOMMENDATION*

For the reasons set forth above, I respectfully **RECOMMEND** that the Motion to Dismiss (docket number 6) filed by Defendants Cheryl Ameen, Suzanne Kofka, and Charles Palmer on May 6, 2016, be **GRANTED**; the Motion to Dismiss (docket number 8) filed by Defendant Marchelle Denker on May 6, 2016, be **GRANTED**; the Motion to Dismiss (docket number 9) filed by Defendant Mary Jane Sokolovske on May 6, 2016, be **GRANTED**; and the Motion for Summary Judgment (docket number 12) filed by Defendants Dewey P. Sloan, Jaquelin Fox, and Kristine Timmins on May 20, 2016, be **GRANTED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 22ⁿᵈ day of August, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA